## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**LAMONT ZAMICHIELI,**                                    :

            **Plaintiff**                    :          **CIVIL ACTION NO. 3:18-0850**

    **v.**                                         :                    **(JUDGE MANNION)**

**JAMIE FICKS, _et al_.,**                              :

          **Defendants**                  :

## MEMORANDUM

### I.  BACKGROUND

Plaintiff, Lamont Zamichieli, an inmate currently confined in the Phoenix State Correctional Institution, Collegeville, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). He complains of incidents which occurred at three prior places of confinement, SCI-Mahanoy, SCI-Green and SCI-Huntingdon. Id. The named Defendants are Jamie Ficks, CRNP ("Ficks"), Sgt. Harpster; K. Ressler; Deputy Tice; Morris L Houser; G. McMahon; Correctional Officer Butler; Richard Gross, Lp[m]; Nurse Melissa; Pennsylvania Department of Corrections; Correctional Officer Stacy Baumbarger and several John and Jane Does. Id. Plaintiff contends that all named Defendants violated various constitutional rights. Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

Presently before the Court is Defendant Ficks' motion to dismiss. (Doc. 31). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will deny, in part and grant, in part, Defendant Ficks' motion to dismiss.

## II.  ALLEGATIONS IN COMPLAINT

Plaintiff alleges that he was seen by Defendant Ficks "in Medical Dept at SCI-Rockview on 7/11/16…on [his] birthday" and they "had sexual conversation, she masturbated [his] penis, then took [his] blood pressure," which was "high plus fast heart rate because of that hand exercise she gave [him] as she pulled it out of [his] pants." (Doc. 1, complaint). Plaintiff was then "housed in infirmary for that day after EKG was taken." Id.

On July 14, 2016, Plaintiff was again seen in medical by Defendant Ficks and "this time Jamie Ficks after kissing hugging Sgt. Harpster in [Plaintiff's] presence whispered in his ear [and] told him to make sure no one enters the room while she handle [Plaintiff]." Id. Defendant Ficks then "performed oral sex on [Plaintiff]," with Plaintiff claiming that "sex with her was non-consensual" and "she ha[d] taken advantage of [Plaintiff]" because "she's staff so I must do what she tells me to do" except he "didn't follow one part of her order because [he] ejaculated semen into her mouth on 7/14/16

- 2 -

approx. 10:15 am." Id. Because of this, Plaintiff claims that Defendant Ficks "felt guilty and mad at [him], so instead of her writing a misconduct on [Plaintiff], she told Sgt. Harpster to write a fabricated misconduct on [him], just so she won't have to raise red flags under her name because (1) she's not licensed practitioner (2) she didn't want to write anything to incriminate herself." Id.

On July 14, 2016, at approximately 10:15 am, Plaintiff was issued Misconduct B951368, charging him with Sexual Harassment, Indecent Exposure and Destroying, Altering, Tampering or Damaging Property, as follows:

> On the above time and date inmate LW2870 Zamichieli was seen by nurse practitioner J. Ficks. While being seen inmate LW2870 had his hand in his pocket and ejaculated into his hand and wiped his hand on the back of J. Ficks' jacket which was hanging on the back of her chair.
>
> J. Ficks states this said jacket is worth about $18 to $20.00.

(Doc. 1 at 27, Misconduct Report).

Plaintiff states that after his encounter with Defendant Ficks he "went back to BB Block from medical appointment, sex abuse by Ficks" and "reported it to a C/O and Sgt that [he] wanted to file PREA" because he "fear[ed] for safety because abuse by Ficks" and "they said they notify Shift Commander and instructed [Plaintiff] to calm down and go to [his] cell." (Doc.

- 3 -

1). Plaintiff claims that "about an hour later [he] was told [he] was being taken to hospital to preserve evidence of Ficks saliva mouth fluids on [his] penis and pants but instead [he] was taken to RHU/DTU on misconduct fabricated by Sgt. Harpster on 7/14/16 on behalf of Jamie Ficks." Id.

Plaintiff was found guilty of the misconduct for indecent exposure and sanction to thirty (30) days disciplinary custody, after which he was released back to general population. Id. Plaintiff states that he "appealed all the way to final review, pleading [his] innocence but they still denied [his] request for relief to overturn the misconduct." Id.

On October 13, 2016, Plaintiff filed Grievance No. 648269, claiming, *inter alia*, that he was a victim of sexual abuse on July 14, 2016 by Defendant Ficks and that it is "she [who] needs sex programs." (Doc. 1 at 33, Official Inmate Grievance).

By Response dated October 19, 2016, Grievance No. 648269 was denied as follows:

> Inmate Zamichieli files this grievance claiming numerous concerns: 1) a PREA violation against Nurse Practitioner-Ficks, 2) A sex offender evaluation recommendation made by PSS-Tice, and 3) Removal from the Nov. parole docket. He claims he is not a sex offender and PSS-Tice is not a classification counselor & therefore has no authority to recommend programming which wasn't recommended during the classification process at SCI-Camp Hill. Additionally, he shouldn't have been removed from the parole docket because of his treatment recommendation. He seeks relief in the form of: 1) The SOP program being removed

from this Correctional Plan, 2) PSS-Tice to be given a 30-day suspension without pay, 3) To be given a loaner TV with free cable for a few months, 4) $50 worth of commissary for the next 5 months and 5) $95,000 in compensation. Upon review, investigation, and discussion I've found the following:

Issue 1) DC-ADM 804 Grievance system is not intended for the reporting of PREA incidents, "Any allegation of sexual nature (abuse-harassment) against a staff member or inmate-on-inmate sexual **abuse must** be addressed through Department policy **DC-ADM 008, "Prison Rape Elimination Act (PREA)."** Additionally, DC-ADM 008 PREA states, "inmates shall not utilize the inmate grievance system to report **sexual abuse or sexual harassment** by a staff member or inmate-on-inmate sexual **abuse."** However, this allegation has been forwarded to the SCI-Rockview Security Office for investigation.

Issue 2) PSS-Tice, who is the sex offender program facilitator, has made a recommendation for a sex offender evaluation following inmate Zamichieli's misconduct on 07/14/16 for Sexual Harassment & Indecent Exposure. Specifically, he sexually aroused himself & subsequently ejaculated on a lab coat of Nurse Practitioner-Ficks which was hung on her office chair. Additionally, Zamichieli ha a prior Admin/Sep transfer request on 1/6/16 because of his infatuation with 2 female medical providers at SCI-Mahanoy. Lastly, inmate Zamichieli has a history of 12 Indecent Exposure and/or Sexual Harassment misconducts. There has been no specific recommendation for sex offender treatment, only a recommendation to participate in an evaluation for possible treatment. Lastly, given inmate Zamichieli's history of sexual inappropriate behaviors during his incarceration, a recommendation for sex offender evaluation is appropriate and PSS-Tice is a qualified staff member to make this recommendation, to conduct the specific evaluation and to make any recommendations for programming.

Issue 3) Upon discussion with SCI-Rockview Supervisor-Winck, inmate Zamichieli remains on the November 2016 parole docket.

Grievance & Relief Denied.

(Doc. 1 at 29, Initial Review Response (emphasis in original)).

Plaintiff states that on October 25, 2016, his "population placement was revoked" and he was "placed on AC status in DTU pending separation transfer for 2 months" and was told "it was for [his] own safety away from Jamie Ficks and Inmate Shipman." Id. Plaintiff believes his transfer was "out of retaliation" for filing a PREA complaint. Id.

Plaintiff claims that Defendant Ficks violated his Eighth Amendment Right "to not undergo cruel and unusual punishment on 7/14/16 when she knowingly, intentionally performed oral sex on Zamichieli, she sexually assaulted Zamichieli and bit his penis causing painful scar, bruising, injuries, also on 7/11/16." Id. Plaintiff alleges that Ficks also violated his Eighth Amendment by "denying, delaying him medical treatment for injuries caused by her" by being "deliberately indifferent to Zamichieli's safety and serious medical needs in medical department on SCI-Rockview on 7/11/16 and 7/14/16." Id. Additionally, he claims that Defendant Ficks "used excessive force planned maliciously in her right state of mind by using force by threat of bodily harm, death when Zamichieli didn't consent to sexual relations with her, she abused her power and threatened with misconduct reports also bit Zamichieli penis…force was unnecessary." Id. Plaintiff also alleges a First Amendment retaliation claim against Ficks, claiming she retaliated against

him for his using the grievance system, by having Defendant Harpster file a false misconduct against him on her behalf, as well as having Plaintiff transferred. Id.

## II.    MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show

- 7 -

that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension

Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV. DISCUSSION

### A. Eighth Amendment Claims

#### i. Eighth Amendment Sexual Abuse Claim

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Sexual abuse of inmates or detainees may violate the Eighth Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution").

In the Eighth Amendment context, a plaintiff must satisfy both an objective and subjective prong akin to excessive force claims. Ricks, 891 F.3d at 475. In that regard, the conduct in question must be "objectively, sufficiently intolerable and cruel, capable of causing harm and the official must have a culpable state of mind." Id. "Regarding the subjective prong, [the Court] consider[s] whether the official had a legitimate penological purpose or if he or she acted maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations omitted).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. See Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Armstrong v. Diraimo, Civ. A. No. 17-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), aff'd, 781 F. App'x 61 (3d Cir. 2019); McCain v. Wetzel, Civ. A. No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) ("sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); Washington v. Gilmore, Civ. A. No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct

physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." Id.

Here, Plaintiff alleges inappropriate direct physical contact between he and Defendant Ficks. Thus, the Court finds that Plaintiff has alleged enough to create a plausible Eighth Amendment claim against Defendant Ficks. The Court recognizes that discovery may well reveal that the alleged conduct does not give rise to an Eighth Amendment claim, but at this early stage of the litigation, the allegations of the Complaint must be accepted as true, and all reasonable inferences must be drawn in Plaintiff's favor.

### ii. **Excessive Force Claim**

The thrust of Plaintiff's complaint is straightforward: he alleges that Defendant Ficks unlawfully bit his genitalia while engaging in inappropriate sexual conduct with him. (Doc. 1).

The Third Circuit has clarified that "the pivotal inquiry in reviewing an inmate's §1983 claim for excessive force is 'whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)). In conducting this analysis of the officer's intent, we consider five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." Id. (quoting Brooks, 204 F.3d at 106). The objective component of the excessive force inquiry is met when "the inmate's injury was more than *de minimis*." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).

Affording Plaintiff, a *pro se* litigant, the benefit of any doubt, the Court finds that because Plaintiff's allegation that Defendant Ficks engaged in unconstitutional conduct survives Defendants' motion to dismiss, Plaintiff's allegation that Defendant Ficks bit his genitalia while engaging in unconstitutional conduct will require further development.

### iii. **Eighth Amendment Deliberate Indifference**

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182

F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate

indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons."). The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's

medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. <u>See</u> id.

Plaintiff has failed to satisfy the deliberate indifference requirement of <u>Estelle</u>. Assuming without deciding that Plaintiff suffered from a serious medical need or condition, Plaintiff's complaint fails to demonstrate that he requested medical treatment from Defendant Ficks and she intentionally withheld treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; <u>Rouse</u>, 12 F.3d at 197. In fact, aside from his own medical assessment that his genitalia suffered "painful scar, bruises & injuries," there is no indication at all in the complaint that he sought medical treatment for his alleged injuries. (<u>See</u> Doc. 1 at 21). Thus, the Court finds that Plaintiff's civil rights complaint fails to articulate an arguable Eighth Amendment deliberate indifference claim. <u>See</u> White, 897 F.2d at 108-110.

## B. **First Amendment Retaliation Claim**

Section 1983 provides a cause of action against any person who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983 (2012). To prevail, Plaintiff therefore must show "(1)

- 15 -

constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Zimmerlink v. Zapotsky, 539 Fed.Appx. 45, 48 (3d Cir. 2013) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)). That an adverse action occurs following protected activity does not suffice to establish a causal link between the two events. Lape v. Pennsylvania, 157 Fed.Appx. 491, 498 (3d Cir. 2005). Timing alone can suffice to establish a causal link, but the timing of the retaliatory action must be "unusually suggestive" of a retaliatory motive. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding that a plaintiff-employee demonstrated a causal link by the circumstances that discharge followed rapidly, only two days later, upon employer's receipt of plaintiff's EEOC claim). A defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity. See Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir. 1984).

If Plaintiff makes out a *prima facie* case, the burden shifts to Defendants to prove that "they would have made the same decision absent the protected conduct for reasons reasonably related to [a legitimate]

penological interest." Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)). If Defendants are able to meet this burden, they are entitled to have the claim dismissed. See Rauser, 241 F.3d at 334. "[C]ourts should afford deference to decisions made by prison officials, who possess the necessary expertise." Id.

Plaintiff alleges that Defendant Ficks "retaliated against Plaintiff for his using of grievance system, etc. exercise 1st amendment right when she maliciously told Defendant Sgt Harpster to warrant false misconduct again [him] on her behalf to avoid self-incrimination and had other Defendants retaliate for her in numerous ways to harm [Plaintiff] prevent access to court/speech." (Doc. 1 at 21). Additionally, he claims that Defendant Ficks' "retaliatory misconduct against Plaintiff has initiated a retaliatory transfer by Defendants." Id.

Plaintiff's retaliation claim against Defendant Ficks fails for several reasons. Initially, by Plaintiff's own account, he was not engaged in constitutionally protected activity when issued Misconduct B951368. He claims that he engaged in a sexual encounter with Defendant Ficks on July 11, 2016 and July 14, 2016. He states the sexual encounter of July 14, 2016 occurred at "approx. 10:15 am", which is the time Misconduct B951368 was written. (See Doc. 1 at 10, 27). Thus, Plaintiff was not engaged in a

constitutionally protected activity at the time he was issued Misconduct B951368. In fact, Plaintiff's own exhibits demonstrate that Plaintiff did not file a grievance regarding his alleged encounter with Defendant Ficks until the filing of Grievance No. 648269 on October 13, 2016. Consequently, Plaintiff's own allegations and exhibits defeat Plaintiff's claim that he was issued Misconduct B951368 in retaliation for using the grievance system.

Likewise, Plaintiff's own allegations fail to establish that Defendant Ficks was in any way involved in the Security Officer's October 25, 2016 decision to place Plaintiff on Administrative Custody status pending an administrative separation transfer. (See Doc. 1 at 28). Plaintiff's exhibit makes no indication that Defendant Ficks is the subject of the separation transfer, nor the author of the transfer. Thus, Plaintiff's claim that Defendant Ficks retaliated against him by transferring or causing him to be transferred to another institution fails.

## V. CONCLUSION

Based on the foregoing, the Court will grant Defendant Ficks' motion to dismiss Plaintiff's Eighth Amendment deliberate indifference claim and Plaintiff's First Amendment retaliation claim. Defendant Ficks' motion to

dismiss will be denied as to Plaintiff's Eighth Amendment excessive force and sexual assault claims.

A separate Order shall issue.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 17, 2022**
18-0850-01