**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**LAMONT ZAMICHIELI,**                              :

                         **Plaintiff**      :      **CIVIL ACTION NO. 3:18-0850**

            **v.**                          :                 **(JUDGE MANNION)**

**JAMIE FICKS,** *et al.*,                          :

                         **Defendants**     :

## MEMORANDUM

I.    BACKGROUND

Plaintiff, Lamont Zamichieli, an inmate currently confined in the Phoenix State Correctional Institution, Collegeville, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). He complains of incidents which occurred at three prior places of confinement, SCI-Mahanoy, SCI-Green and SCI-Huntingdon. Id. The named Defendants are Jamie Ficks, CRNP ("Ficks"), Sgt. Harpster; K. Ressler; Deputy Tice; Morris L Houser; G. McMahon; Correctional Officer Butler; Richard Gross, Lp[m]; Nurse Melissa; Pennsylvania Department of Corrections; Correctional Officer Stacy Baumbarger and several John and Jane Does. Id. Plaintiff asserts, *inter alia*, claims against Defendant Ficks and the Commonwealth

Defendants[1] for alleged sexual assaults which occurred at the various facilities Plaintiff was housed at and his resulting transfers from each facility. Id. Plaintiff believes his transfers were "out of retaliation" for PREA complaints he filed against the named Defendants. Id.

Plaintiff's complaint can be broken down into the following issues: (1) the alleged assault by Kayla Ressler in May 2016; (2) the alleged assault by Jamie Ficks in July 2016; (3) the alleged fabricated and retaliatory misconducts issued by Mark Harpster and Kevin Butler; (4) the alleged denial of medical and mental health care by Richard Goss and Melissa Bolinger in Fall 2016; (5) subsequent isolated claims of retaliation by Morris Houser and Stacey Bumbarger in Fall 2016; (6) changes to Plaintiff programming by Megan Tice; and (7) concerns against the Department, Gerald McMahon, and Morris Houser for transferring him. Id. For relief, Plaintiff seeks compensatory and punitive damages. Id.

By Memorandum and Order dated March 17, 2022, this Court granted Defendant Fick's motion to dismiss Plaintiff's Eighth Amendment deliberate indifference Claim and Plaintiff's First Amendment Retaliation Claims and

---

[1] The Commonwealth Defendants include the Department of Corrections, Gerald McMahon, Morris Houser, Megan Tice, Melissa Bolinger, Mark Harpster, Stacey Bumbarger, Kevin Butler, Kayla Ressler, and Richard Goss.

permitted Plaintiff's Eighth Amendment sexual assault and excessive force claims to proceed. (Docs. 54, 55).

Presently before the Court are Defendant Ficks' motion and supplemental motion for summary judgment, and the Commonwealth Defendants' motion for summary judgment. (Docs. 57, 60, 74). The motions are fully briefed and are ripe for disposition. For the reasons set forth below, the Court will grant Defendant Fick's motion and supplemental motion for summary judgment and will grant the Commonwealth's motion for summary judgment as to all claims except for Plaintiff's claims against Defendant Tice.

## II.    SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do

more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."

L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.  STATEMENT OF UNDISPUTED FACTS

Plaintiff is incarcerated on charges of Escape and Retail Theft. (Doc. 1 at 8).

On December 8, 2015, Plaintiff entered into an Individual Recover Plan (IRP), with the goal to "stop exposing himself to female staff" members, claiming that he would like to "get straight and get medication straight" because his "mood switch from happy to mad," and then he exposes himself. (Doc. 59-2 at 7). He is classified by the Department of Corrections as seriously mentally ill. (Doc. 1 at 19).

On January 5, 2016, at his IRP Review, Plaintiff again stated that he was going to stop exposing his penis to female staff members and that he

wanted "to stay out of trouble." Id. at 5. Plaintiff signed off that he was in agreement with the treatment plan to stop exposing himself. Id.

On March 1, 2016, Traci Jacobson, Unit Manager, was interviewing Plaintiff based on a PREA complaint filed against Jamie Becktel, a female psychologist, who saw Plaintiff on January 21, 2016. (Doc. 59-3 at 2). Specifically, he claimed that Becktel approached his cell which had "paper taped to the window, which read 'don't look in I am taking a birdbath'," and the mental health staff member saw him naked in his cell and the staff member said that he had a "large weapon" and could hurt someone with that and "no wonder women write you up." Id. Plaintiff then gave Becktel a sexually explicit poem that he wrote, entitled "Secret Love". Id. at 10. Plaintiff received a misconduct, so he filed a PREA complaint against Becktel. Id. at 3. During the investigation, Plaintiff stated that he had "an addiction, a habit of exposing himself to women, I look to get love or sex...I am over lusting". Id. During the PREA interview, Plaintiff exposed his penis and began stroking it. Id. When he was told the interview was over and he would get a misconduct, he tore up the statement and urinated on it. Id. The PREA investigation found that Plaintiff's charges of being a victim of sexual assault were unsubstantiated and dismissed the complaint. Id. at 4.

On March 1, 2016, Plaintiff received Misconduct B882608 for sexual harassment and indecent exposure. (Doc. 64-10 at 5).  On March 1, 2016, during his IRP Review, Plaintiff acknowledged making poor choices such as getting misconducts for exposing himself." (Doc. 59-2 at 4). He also indicated that he had an addiction and should only be seen by male staff members. Id. at 2.

On March 7, 2016, Plaintiff was seen cell side for an RHU mental health contact. (Doc. 59-2 at 1). He was ordered to keep his hands in full view at all times. Id. He "complied but complained about it." Id.

On May 17, 2016, Defendant Ressler issued Misconduct No. B761402 to Plaintiff for Indecent Exposure. (Doc. 64-10 at 3). He received thirty days Disciplinary Custody. Id. That same day, Plaintiff filed a DC-135A Request to Staff Member claiming Defendant Ressler allowed inmate Shipman to pull out his penis and masturbate while she watched. (Doc. 64-1 at 2). On May 25, 2016, a hearing examiner found Plaintiff guilty of indecent exposure. Id.

On June 10, 2016, a PREA Sexual Abuse Claim was filed based on Plaintiff's May 17, 2016 Request to Staff Member. (Doc. 64-1 at 7). Members of the security team interviewed staff and other witnesses and reviewed the available closed circuit television images. (Doc. 64-1 at 2-6). During his interview, Plaintiff stated that he observed inmate Shipman masturbate and

it appeared that Defendant Ressler watched him do this. Id. Plaintiff made no mention to the security team that Defendant Ressler threatened him to do the same, as he alleged in his Request to Staff Member. Id. According to the other inmate witness, inmate Shipman was masturbating, but Defendant Ressler had no idea. Id. When Defendant Ressler asked inmate Shipman what he was doing, inmate Shipman claimed he was scratching his leg, but at the same time, Plaintiff[2] began to masturbate in front of Defendant Ressler. Id. It was at that time that Defendant Ressler cancelled the therapy session and notified the captain. Id. The investigation determined that the allegations made by Plaintiff were unsubstantiated due to the evidence obtained. Id. The closed circuit video did not support Plaintiff's allegation that Defendant Ressler allowed inmate Shipman to expose himself, which was further substantiated by the other witness to the incident. Id. The other inmate witness stated to the investigator the Defendant Ressler "didn't know what was going on. Shipman walked to the back of the cage at one point and was masturbating, she just couldn't see it from where she was standing. Then he got on the floor and his arm was down his pants. Ressler asked him, what are you doing. He just said that his leg itched and stood up and then

---

[2] Plaintiff is seen in the video in the cell to the right of the screen when Defendant Ressler points at him and walks away as the other two inmates begin to laugh. An officer then arrives to speak directly to Plaintiff.

Plaintiff started doing it. She didn't see him though because his blue shirt covered it. Once she did realize what Plaintiff was doing, she said, that's it program over and walked out. She wrote him up and told the captain about it." Id. The inmate witness also stated that "They (Shipman and Zamichieli) were doing things on purpose to get out of this jail." Id. The investigation was completed on July 6, 2016, with no charges being brought against Defendant Ressler as the investigation determined that the allegations made by Plaintiff were unsubstantiated. Id.

On June 6, 2016, Plaintiff was approved to be transferred from SCI-Mahanoy to SCI-Rockview as an approved inmate swap. (Doc. 64-3 at 2).

On July 14, 2016, at approximately 10:15 am, while housed at SCI-Rockview, Sgt. Harpster, who was present while Defendant Hicks examined Zamichieli for elevated blood pressure and heart rate, issued Plaintiff Misconduct B951368, charging him with Sexual Harassment, Indecent Exposure and Destroying, Altering, Tampering or Damaging Property, as follows:

> On the above time and date inmate LW2870 Zamichieli was seen by nurse practitioner J. Ficks. While being seen inmate LW2870 had his hand in his pocket and ejaculated into his hand and wiped his hand on the back of J. Ficks' jacket which was hanging on the back of her chair.
>
> J. Ficks states this said jacket is worth about $18 to $20.00.

- 10 -

(Doc. 59-11 at 16). On July 22, 2016, Plaintiff was found guilty of the misconduct for indecent exposure and sanctioned to thirty (30) days disciplinary custody, after which he was released back to general population. (Doc. 59-11 at 17). Plaintiff appealed the Hearing Examiner's Decision to the Program Review Committee who upheld the Hearing Examiner's Decision in a decision dated August 11, 2016. (Doc. 59-12 at 4).

On September 1, 2016, Plaintiff filed Grievance No. 64523 claiming he was denied medical treatment for a chronic health issue and that a co-pay is not necessary to be treated for a chronic health issue. (Doc. 1 at 43). Plaintiff's Grievance No. 64523 was denied as follows:

> According to your grievance on 9/1/2016 you were denied medical care by Nurse Melissa for your chronic condition because you were presented with a Cash Slip prior to being seen.
>
> On 9/1/2016 at approximately 7:40 pm you report you went to medline and reported that you did not feel well and wanted to be checked by a nurse. You state in your grievance you were feeling dizzy, had numbness in your hand and feet and was having heat flashes. The medline nurse instructed you to enter the medical lobby to be seen. Nurse Melissa was on duty and per policy presented you with a DC-138A Cash Slip to be signed. Per nursing notes, you walked without difficulty, had no signs of distress, and reported you felt "off" and wanted your blood pressure checked.
>
> Per DC-ADM 820 Section 1 an inmate shall pay a $5.00 co-pay fee for any non-emergency medical service provided at the inmate's request and the inmate shall sign an authorization form which describes the medical service provided and the amount

that his/her account will be debited. A DC-138A, Cash Slip shall be used for this purpose, indicating the type of medical service provided.

The symptoms you reported are not considered chronic conditions and the nurse appropriately deemed your visit as a non-emergent medical service in which co-pay applies per DC-ADM 820 as stated above.

You subsequently refused to sign the Cash Slip and stated "I'm not signing. I'm going back to the block." Per DC-ADM 820 Section 2, a non-emergent medical service shall not be provided to an inmate who refuses to sign the authorization form, either before or after having been advised that a fee will be charged for the medical services.

Nurse Melissa offered you medical care per policy. You chose to not sign the Cash Slip and returned to the block This grievance is denied.

(Doc. 1 at 42). The record reveals no further appeal of this grievance.

On September 10, 2016, Plaintiff filed Grievance No. 643554, claiming that he has not been seen by psychology and believes that a psychologist should be available to him every day. (Doc. 1 at 31).

On September 23, 2016, Defendant Tice recommended Plaintiff for a Sex Offender Program Evaluation. (Doc. 71-6 at 2).

On September 28, 2016, Defendant Goss denied Plaintiff's Grievance No. 643554 as follows:

I have read this grievance and identified several issues you want addressed but it is unclear what the several issues are or what you are asking. DOC Policy 13.8 does outline the provision of Mental Health services as you suggest, however, the issues you

claim we are in violation of does not exist in Policy. Policy states psychology will be available Monday through Friday, but nowhere does it state psychology staff must be on the unit and available at all times. Each Psychology staff is assigned a caseload and inmates are seen at regular intervals per appointment consistent with common practice in the field.

The female assigned to your block has been removed from the responsibility of seeing you due to your inappropriate actions towards females.

I stated earlier that I am unable to identify numerous issues in this grievance, but all appear to be based on your allegation of failure to provide services per the DOC Policy 13.8.1. I assure you we are following the 12.8.1 and the examples you state as violations are not consistent with the DOC 13.8.1.

This grievance has no standing in Policy and is denied.

(Doc. 1 at 32). No further appeal of this grievance was filed.

On October 13, 2016, Plaintiff filed Grievance No. 648269, claiming, *inter alia*, that he was a victim of sexual abuse on July 14, 2016 by Defendant Ficks and that it is "she [who] needs sex programs." (Doc. 64-4 at 2). Plaintiff also challenged Defendant Tice's recommendation for a sex offender evaluation for Plaintiff. Id.

By Response dated October 19, 2016, Grievance No. 648269 was denied as follows:

Inmate Zamichieli files this grievance claiming numerous concerns: 1) a PREA violation against Nurse Practitioner-Ficks, 2) A sex offender evaluation recommendation made by PSS-Tice, and 3) Removal from the Nov. parole docket. He claims he is not a sex offender and PSS-Tice is not a classification counselor &

- 13 -

therefore has no authority to recommend programming which wasn't recommended during the classification process at SCI-Camp Hill. Additionally, he shouldn't have been removed from the parole docket because of his treatment recommendation. He seeks relief in the form of: 1) The SOP program being removed from this Correctional Plan, 2) PSS-Tice to be given a 30-day suspension without pay, 3) To be given a loaner TV with free cable for a few months, 4) $50 worth of commissary for the next 5 months and 5) $95,000 in compensation. Upon review, investigation, and discussion I've found the following:

Issue 1) DC-ADM 804 Grievance system is not intended for the reporting of PREA incidents, "Any allegation of sexual nature (abuse-harassment) against a staff member or inmate-on-inmate sexual **abuse must** be addressed through Department policy **DC-ADM 008, "Prison Rape Elimination Act (PREA)."** Additionally, DC-ADM 008 PREA states, "inmates shall not utilize the inmate grievance system to report **sexual abuse or sexual harassment** by a staff member or inmate-on-inmate sexual **abuse."** However, this allegation has been forwarded to the SCI-Rockview Security Office for investigation.

Issue 2) PSS-Tice, who is the sex offender program facilitator, has made a recommendation for a sex offender evaluation following inmate Zamichieli's misconduct on 07/14/16 for Sexual Harassment & Indecent Exposure. Specifically, he sexually aroused himself & subsequently ejaculated on a lab coat of Nurse Practitioner-Ficks which was hung on her office chair. Additionally, Zamichieli had a prior Admin/Sep transfer request on 1/6/16 because of his infatuation with 2 female medical providers at SCI-Mahanoy. Lastly, inmate Zamichieli has a history of 12 Indecent Exposure and/or Sexual Harassment misconducts. There has been no specific recommendation for sex offender treatment, only a recommendation to participate in an evaluation for possible treatment. Lastly, given inmate Zamichieli's history of sexual inappropriate behaviors during his incarceration, a recommendation for sex offender evaluation is appropriate and PSS-Tice is a qualified staff member to make this recommendation, to conduct the specific evaluation and to make any recommendations for programming.

Issue 3) Upon discussion with SCI-Rockview Supervisor-Winck, inmate Zamichieli remains on the November 2016 parole docket.

Grievance & Relief Denied.

(Doc. 64-4 at 3, Initial Review Response (emphasis in original)).

On October 19, 2016, Plaintiff filed a PREA Sexual Abuse claim against Defendant Jamie Ficks, claiming that Ficks performed oral sex on him in the Medical Sick Call Room. (Doc. 59-11 at 9).

On November 4, 2016, Defendant Tice recommended Plaintiff for a Sex Offender Program Mod-High Intensity. (Doc. 71-6 at 3).

On November 10, 2016, after a thorough investigation, Plaintiff's PREA complaint was found to be unsubstantiated as follow:

**<u>SUMMARY OF FINDINGS</u>**

When interviewed, inmate Zamichieli LW2870 stated that he was at Sick Call on 7/14/16 around 1000 and, while they were in the Sick Call Room, Nurse Practitioner Jamie Ficks gave him (Zamichieli) oral sex. Inmate Zamichieli claims that Ms. Ficks made false allegations about him on that day because he claims he ejaculated in her mouth without her approval.

When interviewed, Jamie Ficks stated that at no time, on or after 7/14/16, did she engage in oral sexual activity with inmate Zamichieli LW2870. Ms. Ficks stated that she did treat him on 7/14/16 at Sick Call for blood pressure issues. Ms. Ficks states that she assessed him and gave him a tissue (he asked for one), he blew his nose, threw the tissue away, and left the medical area. Again, Ms. Ficks stated that no inappropriate sexual contact of any kind was performed or committed on inmate Zamichieli.

- 15 -

When interviewed, Sgt. Harpster stated inmate Zamichieli LW2870 was at sick call on 7/14/16. Sgt. Harpster stated that he issued a DC-141 to inmate Zamichieli on that date for Sexual Harassment, Destroying Property, and Indecent Exposure stemming from an incident that was reported to him (Harpster) from CRNP Jamie Ficks. Sgt. Harpster stated that at no time did he see CRNP Ficks have any inappropriate physical contact with inmate Zamichieli, to include her providing him with oral sex.

A review is the Extraordinary Occurrent Report (EOR 2016-ROC-00241) and associated documents, which was completed as a result of the Sexual Abuse allegation made by inmate Zamichieli LW2870, was conducted. On 10/16/16 at 1115 Lt. Selfridge notified Capt. Hardy (0600-1400 Shift Commander) advising him that inmate Zamichieli LW2870 was making a PREA Sexual Abuse claim against CRPN Jamie Ficks. Inmate Zamichieli claims that, on 7/14/16 around 1000, CRPN Ficks performed oral sex on him in the medical sick call room. Lt. Selfridge initiated PREA checklists per the DC-ADM 008 and command notifications were made. PSP Trooper Pollick was notified and is not investigating due to inmate Zamichieli not wanting to file charges. Lt. Selfridge escorted inmate Zamichieli to medical for assessment. There was no evidence collection or outside hospital trip for evaluation due to the alleged incident happened outside of the 96 hour window. Inmate Zamichieli was escorted back to his housing unit. This incident will continue to be investigated by the SCI-Rockview Security Office.

## CONCLUSION

This investigation determined that the sexual abuse allegation made by Inmate Zamichieli LW2870 was unsubstantiated. Inmate Zamichieli LW2870 stated he was at Sick Call on 7/4/16 around 1000 and, while they were in the Sick Call Room, Nurse Practitioner Jamie Ficks gave him (Zamichieli) oral sex. CRNP Flicks denies the allegation, stating that at no time did she ever engage in oral sex with inmate Zamichieli. Sgt. Harpster denies ever seeing CRNP Ficks engage in oral sex with inmate Zamichieli. There was no video evidence that would have

assisted with the investigation due to there is no camera coverage in the medical Sick Call rooms. PSP Trooper Pollick was notified and is not investigating due to inmate Zamichieli not wanting to file charges. There were no inmate witnesses provided. There was not enough evidence to unfound or substantiate the allegation.

(Doc. 59-11 at 1-3).

On November 30, 2016, Defendant, CO Butler, issued Plaintiff Misconduct Report No. B951544 for Threatening Another Person based on the following:

On 11/30/2016 at approximately 1025 hours I, CO1 K. Butler was escorting an inmate back to his cell, GB2027, from the DTU shower. After securing that said inmate in GB2027, I CO1 K. Butler passed cell GB2028 housed by Inmate LW2870 Zamichieli. First Inmate LW2870 Zamichieli stated to Me CO1 K. Butler "Butler, I need to speak to you. It's extremely important." Next, I, CO1 K. Butler replied to Inmate Zamichieli by stating "I have about 4 or 5 important things going on and would return as soon as I have time." Then Inmate Zamichieli clearly stated to me CO1 K. Butler "You will have time and see how important shit is when I start throwing shit on people." Finally, I, CO1 K. Butler informed Inmate Zamichieli he would receive a misconduct and exited B2 range.

(Doc. 64-12 at 2).

Pursuant to a Vote Sheet dated November 18, 2016, Plaintiff was referred for an Administrative Separation Transfer. (Doc. 64-9 at 2). On December 14, 2016, a Separation Form and supporting documentation was sent to the Office of Population Management (OPM) indicating that Zamichieli is to be separated from Staff Member Ms. Ficks based on an

investigation conducted by the Security Office. Id. On December 21, 2016, Plaintiff's transfer was approved, and Plaintiff was transferred to SCI-Greene on December 22, 2016. Id. From February 23, 2015 through the date of his transfer to SCI-Greene, Plaintiff had incurred fourteen misconducts related to indecent exposure and sexual harassment. (Doc. 64-10 at 1-7).

On December 27, 2016, the Board of Probation and Parole denied Plaintiff parole, based on *inter alia*, Plaintiff's "need to participate in and complete additional institutional programs," stating that at his next review the Board would consider whether he had "successfully participated in a treatment program for sex offenders and Thinking for Change or other cognitive behavioral program." (Doc. 71-8 at 2).

On April 18, 2017, Plaintiff was transferred from SCI-Greene to SCI-Huntingdon. (Doc. 1 at 4). He resides in the Department of Corrections' Diversionary Treatment Unit. (Doc. 64-8 at 4).

## IV. DISCUSSION

### A. Defendant Ficks

The only remaining claims permitted by this Court to proceed against Defendant Ficks were Plaintiff's Eighth Amendment sexual assault and excessive force claims. Specifically, Plaintiff claims that Defendant Ficks

Case 3:18-cv-00850-MEM-DB   Document 83   Filed 07/21/23   Page 19 of 54


violated his Eighth Amendment Right "to not undergo cruel and unusual punishment on 7/14/16 when she knowingly, intentionally performed oral sex on Zamichieli, she sexually assaulted Zamichieli and bit his penis causing painful scar, bruising, injuries, also on 7/11/16." Id. Plaintiff alleges that Ficks also violated his Eighth Amendment by "denying, delaying him medical treatment for injuries caused by her" by being "deliberately indifferent to Zamichieli's safety and serious medical needs in medical department on SCI-Rockview on 7/11/16 and 7/14/16." Id. Additionally, he claims that Defendant Ficks "used excessive force planned maliciously in her right state of mind by using force by threat of bodily harm, death when Zamichieli didn't consent to sexual relations with her, she abused her power and threatened with misconduct reports also bit Zamichieli penis...force was unnecessary." Id.

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Sexual abuse of inmates or detainees may violate the Eighth Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution").

In the Eighth Amendment context, a plaintiff must satisfy both an objective and subjective prong akin to excessive force claims. Ricks, 891

F.3d at 475. In that regard, the conduct in question must be "objectively, sufficiently intolerable and cruel, capable of causing harm and the official must have a culpable state of mind." Id. "Regarding the subjective prong, [the Court] consider[s] whether the official had a legitimate penological purpose or if he or she acted maliciously and sadistically for the very purpose of causing harm." Id. (internal quotations omitted).

An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. See Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eighth Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Armstrong v. Diraimo, Civ. A. No. 17-237, 2018 WL 6788524, at *4 (W.D. Pa. Dec. 26, 2018), aff'd, 781 F. App'x 61 (3d Cir. 2019); McCain v. Wetzel, Civ. A. No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) ("sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"); Washington v. Gilmore, Civ. A. No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with the alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient

to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." Id.

The Third Circuit has clarified that "the pivotal inquiry in reviewing an inmate's §1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)). In conducting this analysis of the officer's intent, we consider five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." Id. (quoting Brooks, 204 F.3d at 106). The objective component of the excessive force inquiry is met when "the inmate's injury was more than *de minimis*." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).

- 21 -

Here, the record clearly demonstrates that on July 14, 2016, Misconduct Report, B 951368, was issued against Plaintiff after Sgt. Harpster reported that he viewed Plaintiff masturbate into his hand and then put his hand on Defendant Ficks' jacket hanging over a chair. The misconduct charges were sexual harassment, indecent exposure, and destroying/damaging property. Plaintiff was placed in Administrative Custody pending a hearing. The hearing on Misconduct, B 951368 resulted in a finding against Plaintiff.

Although Plaintiff claims that during this alleged encounter, Defendant Ficks "bit his penis causing painful scar, bruising, injuries", Plaintiff waited some three months before filing Grievance No. 648269 on October 19, 2016. Regardless, the record reveals that Plaintiff's Grievance No. 648269 was denied as it related to Defendant Ficks, as pursuant to DC-ADM 008 PREA states "Inmates shall not utilize the inmate grievance system to report sexual abuse or sexual harassment by a staff member or inmate-on-inmate sexual abuse." (Doc. 64-4 at 3). Plaintiff's PREA allegations against Defendant Ficks were then thoroughly investigated and determined to be unsubstantiated. Plaintiff has produced no documentary evidence to counter the evidence of record or to substantiate his claims that he was the victim of

sexual abuse or was subjected to any excessive force by Defendant Ficks.[3] The Court will, therefore, grant summary judgment in favor of Defendant Ficks with respect to Plaintiff's Eight Amendment claims.

### B. Commonwealth Defendants

### 1. Official Capacity Claims

Plaintiff brings suit against the Department of Corrections and various Commonwealth Defendants in their individual and official capacities. (Doc. 1). Defendants submit that the Eleventh Amendment to the United States Constitution bars Plaintiff's civil rights claims against them in their official capacities because they do not qualify as "persons" under Section 1983. (Doc. 64, at 24).

The Eleventh Amendment to the United States Constitution precludes private individuals from bringing suit against a state, or one of its agencies, or in federal court. U.S. Const. Amend. XI; State School and Hospital v. Halderman, 465 U.S. 89 (1984). Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and may be properly considered by way of a motion to dismiss under Rule

---

[3] Because there was no assault on Plaintiff, his Eighth Amendment failure to intervene and protect claim against Defendant Harpster fails as a matter of law. See Farmer v. Brennan, 511 U.S. 825 (1994); Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002)(finding that "an officer is only liable if there is a realistic and reasonable opportunity to intervene").

12(b)(1) of the Federal Rules of Civil Procedure. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996). "This jurisdictional bar applies regardless of the nature of the relief sought," including suits brought by plaintiffs in equity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984) (citing Missouri v. Fiske, 290 U.S. 18, 27 (1933)).

While Defendants quite "literally are persons[,]" a suit for monetary damages brought against a state official in his official capacity is not a suit against that official; it is a suit against that official's office. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Allen v. New Jersey State Police, 974 F.3d 497, 506 (3d Cir. 2020). This is no different from a suit against the State itself, which is barred by the Eleventh Amendment unless (1) the State has waived its immunity or (2) Congress has exercised its power under §5 of the Fourteenth Amendment to override that immunity. See Will, 491 U.S. at 66, 70-71.

The Court finds that the two exceptions to Eleventh Amendment immunity do not apply here. As explained by the United States Court of Appeals for the Third Circuit, "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via §1983[.]" See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted); see also

42 Pa. Stat. C.S.A. §8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); Quern v. Jordan, 440 U.S. 332, 345 (1979) (concluding that the history and language of 42 U.S.C. §1983 establish that Congress did not intend to make the States liable under that statute).

Thus, to the extent that Defendants seek dismissal of Plaintiff's §1983 claims for monetary damages against Defendants in their official capacities, the Court concludes that Defendants are entitled to summary judgment. See Will, 491 U.S. at 61-71.

When a plaintiff sues state officials in their official capacities for prospective injunctive relief under §1983, Eleventh Amendment immunity is not extended to those officials. See Will, 491 U.S. at 71 n.10 (noting that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State' " (citations omitted)); Iles v. de Jongh, 638 F.3d 169, 177 (3d Cir. 2011) (explaining that a state employee may be sued in his official capacity, not "for all injunctive relief," but rather, only for "**prospective** injunctive relief," because official-

capacity claims for prospective injunctive relief are not treated as actions against the State (citing Will, 491 U.S. at 71 n.10) (emphasis in original)).

Plaintiff, however, is no longer housed at SCI-Mahanoy or SCI-Rockview, thus, his claims for injunctive relief against Defendants are moot. See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (stating that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims"); Marshall v. Pa. Dep't of Corr., 499 F. App'x 131, 134 (3d Cir. 2012) (concluding that because Marshall "asked for an injunction that restrains SCI–Mahanoy officials from violating his civil rights, but he has now been transferred out from under their control[,] ... the District Court was unable to fashion any form of meaningful relief against these defendants, and thus the motion for injunctive relief was moot").

### 2. Eighth Amendment Sexual Assault Claims Against Ressler

Prison sexual abuse may constitute cruel and unusual punishment in violation of the Eight Amendment. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018).

To succeed on an Eighth Amendment sexual abuse claim, a plaintiff must establish both an objective prong and a subjective prong. Id. at 475. "That is, the incident must be objectively, sufficiently intolerable and cruel,

capable of causing harm, and the official must have a culpable state of mind." Id.

A defendant has a culpable state of mind if he has no "legitimate penological purpose" for his actions and acts "maliciously and sadistically for the very purpose of causing harm." Id. (quoting Whitley v. Albers, 475 U.S. 312, 319-20 (1986)). This mental state can be inferred from circumstantial evidence, and the "nature of the violative conduct itself will often be enough to demonstrate the prison official's culpable state of mind." Id. (quoting Crawford v. Cuomo, 796 F.3d 252, 252 (2d Cir. 2015)). Actions taken with "a desire to humiliate the inmate or gratify the officer" are sufficient to establish the subjective prong of an Eighth Amendment sexual abuse claim. Id. at 476.

As for the objective prong, courts considering whether a defendant's conduct is objectively cruel and unusual should do so "with sensitivity to 'evolving standards of decency.' " Id. at 477 (quoting Graham v. Florida, 560 U.S. 48, 58 (2010)). There is no mechanical test for determining whether an alleged incident of sexual contact is sufficiently serious to find a violation of the Eighth Amendment, but the "scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact." Id. at 478. In addition, "it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity,

- 27 -

combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." Id.

In order to establish an Eighth Amendment violation, a plaintiff does not need to prove multiple incidents of sexual abuse. Id. at 475. Rather, "a single incident of sexual abuse, if **sufficiently severe** or serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." Id. (emphasis in original) (quoting Crawford, 796 F.3d at 257 (2d Cir. 2015)). However, "[v]erbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)). Rather, "physical sexual assault or threats of physical assault is required for the objective element to be met." Id.

Plaintiff alleges that on May 17, 2016, while he was housed at SCI-Mahanoy, he was sexually abused and harassed by Defendant Ressler, a female social worker. (Doc. 1). Specifically, Plaintiff states that while Defendant Ressler was conducting a group therapy program, she instructed him and inmate Shipman to expose themselves and masturbate for her. Id. He claims that Defendant Ressler threatened him with a fabricated misconduct if he didn't follow her orders. Id.

The record evidence, however, evinces a different scenario. The record reveals that an abuse investigation was initiated after staff received an inmate request slip dated May 17, 2016 from Plaintiff. The complaint claimed that Defendant Ressler allowed inmate Shipman to pull out his penis and masturbate as she watched, and during his interview. Plaintiff stated that he observed inmate Shipman masturbate and it appeared that Defendant Ressler watched him do this. Plaintiff made no mention to the security team that Defendant Ressler threatened him.

According to the other inmate witness, inmate Shipman was masturbating, but Defendant Ressler had no idea. This is corroborated by the closed circuit video footage which reveals that when Defendant Ressler asked inmate Shipman what he was doing, inmate Shipman claimed he was scratching his leg, but at the same time, Plaintiff began to masturbate in front of Defendant Ressler. The investigation determined that the allegations made by Plaintiff were unsubstantiated due to the evidence obtained, specifically, the video footage, which revealed that that Defendant Ressler had no idea what was going on until Plaintiff began to masturbate in front of her.

Where the events at issue have been captured on videotape, the court must consider the videotaped evidence in determining whether there is any

genuine dispute as to material facts. See Scott v. Harris, 550 U.S. 372, 380-81 (2007). The court must view the facts in the light depicted by the videotape. See id. (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). If a review of the videotape "refutes an inmate's claims that excessive force was used against him, and the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is entirely appropriate." Smalls v. Sassaman, 2019 WL 4194211, at *8 (M.D. Pa. Sep. 4, 2019) (citing Tindell v. Beard, 351 Fed. Appx. 591 (3d Cir. 2009)). No aspect of the video, or any other portion of the record, reveals that Defendant Ressler ever made any physical contact with Plaintiff. This is sufficient for the court to grant summary judgment to Ressler as to the sexual assault claim. See Scott v. Harris, 550 U.S. 372, 380-81 (2007) (holding that when video evidence "blatantly contradict[s]" the plaintiff's version of events, the court should view the evidence in the light depicted by the video when reviewing a motion for summary judgment). Accordingly, the Court will grant Ressler summary judgment as to the sexual assault claim.

### 3. **First Amendment Retaliation Claim**

Section 1983 provides a cause of action against any person who, under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. §1983 (2012). To prevail, Plaintiff therefore must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Zimmerlink v. Zapotsky, 539 Fed.Appx. 45, 48 (3d Cir. 2013) (quoting Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)). That an adverse action occurs following protected activity does not suffice to establish a causal link between the two events. Lape v. Pennsylvania, 157 Fed.Appx. 491, 498 (3d Cir. 2005). Timing alone can suffice to establish a causal link, but the timing of the retaliatory action must be "unusually suggestive" of a retaliatory motive. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding that a plaintiff-employee demonstrated a causal link by the circumstances that discharge followed rapidly, only two days later, upon employer's receipt of plaintiff's EEOC claim). A defendant may not be

held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity. See Laskaris v. Thornburgh, 733 F.2d 260, 265 (3d Cir. 1984).

If Plaintiff makes out a *prima facie* case, the burden shifts to Defendants to prove that "they would have made the same decision absent the protected conduct for reasons reasonably related to [a legitimate] penological interest." Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)). If Defendants are able to meet this burden, they are entitled to have the claim dismissed. See Rauser, 241 F.3d at 334. "[C]ourts should afford deference to decisions made by prison officials, who possess the necessary expertise." Id.

Plaintiff alleges that Defendant Ressler retaliated against Plaintiff "by writing untruthful misconduct." (Doc. 1 at 22). He raises the identical claim against Defendant Harpster, claiming that Defendant Harpster wrote a retaliatory misconduct against him after he was allegedly assaulted by Defendant, Jamie Hicks. Id.

Plaintiff also alleges that Defendants Houser and McMahon transferred Plaintiff from SCI-Rockview to SCI-Greene on December 22, 2016, out of retaliation for Plaintiff reporting the sexual abuse by Defendant Jamie Ficks. (Doc. 1).

- 32 -

Finally, Plaintiff claims that Defendant Butler fabricated a misconduct against him for filing the Ficks PREA complaint. (Doc. 1 at 24).

Plaintiff's retaliation claim against Defendant Ressler fails for several reasons. Initially, the record demonstrates that Plaintiff's was not engaged in constitutionally protected activity on May 17, 2016, when issued Misconduct B882608 for sexual harassment and indecent exposure. At best, the record reveals that Plaintiff filed a PREA complaint **after** being issued Misconduct B882608 by Defendant Ressler. Consequently, Plaintiff has failed to meet his *prima facie* burden of a retaliatory misconduct authored by Defendant Ressler and allegations that Defendant Ressler violated Plaintiff's First Amendment rights cannot survive summary judgment.

Likewise, the record fails to establish that Ressler was in any way involved in the Security Officer's June 2, 2016 decision to transfer Plaintiff. Ressler neither requested nor approved the transfer. (Doc. 64-3 at). Nor was she the reason for the transfer. Id. Plaintiff's transfer petition reveals that Plaintiff was transferred as an approved inmate swap that was necessary at the time, and not due to his abuse complaint. Id. Finally, to the extent that Plaintiff claims that his transfer put him in danger because inmate Shipman was also transferred to SCI-Rockview and Plaintiff believed that a separation

- 33 -

file existed between he and Shipman, Plaintiff, himself, admits that no separation file existed. (See Doc. 1 at 4).

As to Defendant Harpster, the record once again reveals that Plaintiff was not engaged in any protected activity prior to the July 14, 2016 issuance of Misconduct B951368, charging him with Sexual Harassment, Indecent Exposure and Destroying, Altering, Tampering or Damaging Property. Again, at best, the record reveals that Plaintiff filed Grievance No. 648269 on October 13, 2016, three months **after** Plaintiff received the misconduct by Harpster. As such, Plaintiff completely misses the causal link between any constitutionally protected conduct and the retaliatory action.[4] Likewise, with Defendant Butler, Plaintiff completely misses the causal link between Plaintiff's October 19, 2016 PREA complaint filed against Ficks and Plaintiff's

---

[4] This same rationale applies to Plaintiff's attempt to raise a Fourteenth Amendment Due process or Equal Protection claim against Defendant Ficks for allegedly telling Harpster to file a false misconduct against him for which he was found guilty. (Doc. 1 at 21). Initially, the Court notes that Plaintiff's First Amendment retaliation claim against Ficks for telling Defendant Sgt Harpster to issue a false misconduct was dismissed in this Court's March 17, 2022 Memorandum and Order. To the extent that he seeks to spin it as a Fourteenth Amendment Due Process and Equal Protection claim, aside from the fact that there is no protected liberty interest in exposing yourself to DOC personnel, Plaintiff's complaint is completely devoid of any facts or allegations that he was treated differently based on his race, religion, or other prohibited consideration, to support an Equal Protection claim. As such, his claim fails.

misconduct issued by Defendant Butler on November 30, 2016 for threatening another person.

Lastly, as to Plaintiff's December 22, 2016 transfer to SCI-Greene[5], the record reveals that Plaintiff was transferred from SCI-Rockview due to a separation put in place with Defendant Ficks. (Doc. 64-9 at 2).

Thus, because there is no evidence that Plaintiff engaged in any protected activity prior to the issuance of either misconduct, any allegation that Defendants Ressler or Harpster violated Plaintiff's First Amendment rights cannot survive summary judgment, and because Plaintiff's abuse complaint was not a substantial or motivating factor for either of his transfers, any allegation that the Commonwealth Defendants violated Plaintiff's First Amendment rights cannot survive summary judgment. Consequently, the Court will grant the Commonwealth Defendants summary judgment as to Plaintiff's First Amendment retaliation claims.

---

[5] Additionally, as part of his retaliation claim, Plaintiff asserts that on November 28, 2016, while he awaited the transfer to SCI-Greene, Defendant Bumbarger tampered with his food trays on one occasion. (Doc. 1 at 15). Again, in addition to failing to allege that he was engaged in a constitutionally protected conduct, Plaintiff completely misses the causal link between Plaintiff's October 19, 2016 PREA complaint filed against Ficks and a November 28, 2016 isolated incident of his food tray being allegedly tampered with. Thus, Defendant Bumbarger is entitled to summary judgment on Plaintiff's retaliation claim.

### 4. **Fourth Amendment Claim**

Plaintiff claims that Defendant Ressler violated his Fourth Amendment rights by viewing him naked without his consent. (Doc. 1). Additionally, he claims that Defendant Bumbarger violated his right to privacy by requiring him to uncover his cell window and watched him shower on one occasion. (Doc. 1 at 15).

Penological imperatives, including the paramount importance of prison security, diminish the privacy rights of those incarcerated in prisons. See Hudson v. Palmer, 468 U.S. 517 (1984). The Supreme Court in Hudson "concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration." Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001) (citing Hudson, 468 U.S. at 529 (1984)) (holding that prisoners have no Fourth Amendment right to privacy in their cells); Bell v. Wolfish, 441 U.S. 520, 537 (1979) ("Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility.").

The record reveals that Plaintiff exposed himself to Defendant Ressler without her consent. As such, Plaintiff's inappropriate action does not rise to

a violation of his privacy rights.[6] As to Plaintiff's claim that Defendant Bumbarger required him to uncover his cell window, institutional security requires that prison officials be able to monitor the activities of prisoners. For example, in Miller v. Spaulding, 2015 WL 2357115 (M.D. Pa. May 15, 2015), the court held that requiring prisons to create an area within each individual cell, to provide inmates privacy for the toilet area, which could not be visually monitored by correctional staff would clearly pose an obvious threat to security and the safety of both prison staff and prisoners. Moreover, occasional viewing of inmates while showering or using toilet facilities has been held to be appropriately within the parameters of maintaining institutional security and therefore, constitutional. Bracey v. Beard, No. CIV.A. 11-217E, 2014 WL 4659639, at *10 (W.D. Pa. Sept. 17, 2014), aff'd sub nom. Bracey v. Sec'y Pennsylvania Dep't of Corr., 686 F. App'x 130 (3d Cir. 2017)  In light of this authority, Plaintiff's allegations in this case do not rise to the level of a Fourth Amendment violation.

Thus, summary judgment will be entered in favor of Defendants Ressler and Bumbarger on Plaintiff's Fourth Amendment privacy claim.

### 5. Eighth Amendment Medical Claims

---

[6] This same rationale applies to Plaintiff's claim that his "bodily privacy" was violated by Defendant Ficks viewing his naked body after grabbing his penis and having oral sex in violation of the Eighth Amendment. (see Doc. 1 at 23).

Plaintiff states that Defendant Nurse Melissa Bolinger "violated 8th Amendment deliberate indifference to serious medical needs and needs for attention by intentionally denying me treatment to make me suffer…she see in my medical records and knows that seizure disorder, hypertension, tachycardia are all serious medical needs of mine and required immediate attention/care which cause extreme pain and suffering and on 9/1/16 later than night had seizure fell of bed god injured." (Doc. 1 at 25).

The record before this Court reveals that Plaintiff, himself, refused treatment when he refused to sign the co-payment authorization and went back to his block. (See Doc. 1 at 42). Although Plaintiff argues that he should not be subject to a co-pay because he suffers a chronic condition, there is no record evidence that Plaintiff suffers from a chronic medical condition and is entitled to a co-pay exemption. As was determined in the Initial Review Response, "[t]he symptoms [Plaintiff] reported are not considered chronic conditions and the nurse appropriately deemed [his] visit as a non-emergent medical service in which a co-pay applies per DC-ADM 820." Id. Thus, Plaintiff's refusal to sign the copay authorization form was the reason he did not receive medical care, not any alleged deliberate indifference on behalf of Defendant Bolinger. If Plaintiff disagreed with the Initial Review Response, his remedy was to appeal the response to the Facility Manager. There is no

evidence of record that he did. Nor is there any documentary evidence that Plaintiff suffered any further injury after his medline visit.

It is well-established that allegations relating to a defendant's consideration of the costs associated with treating a prisoner's non-emergency medical condition do not state a claim of deliberate indifference because prisoners "do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." Lanza v. Moclock, 2018 WL 3060030, *9 (M.D. Pa. June 20, 2018) (quoting Winslow v. Prison Health Servs., 406 Fed Appx. 671,674 (3d Cir. 2011)); see also, Bracey v. Pa. Dep't Corr., 2012 WL 750911, *8 (W.D. Pa. Feb. 7, 2012) (citing Crews v. Beaver, 2010 WL 3632144 (M.D. Pa. Sept. 10, 2010) (holding an inmate's refusal to follow procedures governing the provision of medication did not constitute deliberate indifference)); Reynolds v. Wagner, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of Estelle does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."). Accordingly, the Court will grant summary judgment in favor Defendant Bolinger on Plaintiff's Eighth Amendment deliberate indifference claim.

Plaintiff also claims that Defendant Goss denied him mental health treatment, claiming that Goss knows he is seriously mentally ill and continues to confine him to restricted housing and fails to train his employees to deal with mental health patients. (Doc. 1 at 23, 24). Specifically, he claims that he was being held in the DTU at SCI-Huntingdon under harsh conditions and continued to be denied mental health treatment by Defendant Goss. Id. He concludes that the prolonged isolation in the DTU threatens Plaintiff's mental and physical well-being, which is intentionally ignored by Defendant Goss. Id. He further claims that Goss denied him mental health treatment, in violation of the First and Fourteenth Amendment equal protection principles because of his sex. Id.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the

subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

- 41 -

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id.

Courts have recognized the devastating mental health consequences caused by long-term isolation in solitary confinement. See Williams v. Sec'y of the Pa. Dep't of Corr., 848 F.3d 549 (3d Cir. 2017).

Plaintiff is classified by the Department as seriously mentally ill and was placed on the mental health roster. (Doc. 1). He claims that he has, among other things, had suicide attempts, engages in self-injurious behavior, and bangs his head against the wall. Id. All signs, according to Plaintiff that his mental health is deteriorating while under the care of Defendant Goss. Id.

Plaintiff has failed to satisfy the deliberate indifference requirement of Estelle, as there is no record evidence that Plaintiff requested medical treatment from Defendant Goss and he intentionally withheld treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse, 12 F.3d at 197.

- 42 -

Initially, the Court notes that Defendant Goss is the supervisor of the Psychology staff. (Doc. 64-8 at 13). To the extent that Plaintiff alleges that Defendant Goss failed to provide adequate care in the way of psychotropic medication, Psychiatry is a separate department, which comes under Medical, and Defendant Goss has no ability to supervise or intervene with the Psychiatry department. Id.

As to Plaintiff claims that he has been "in restricted housing unit 23 hours a day lock in for years," (Doc. 1 at 24), Plaintiff was placed in the Department of Corrections' Diversionary Treatment Unit, which is not isolation as he lives on a housing unit with other inmates. (Doc. 64-8). Placement in the DTU provides a significant level of mental health treatment, including, but not limited to, daily contact with Psychology staff, group therapy, and weekly offers of out-of-cell therapy sessions. Id. Plaintiff offers nothing to refute this. Thus, there is simply no evidence to demonstrate that Plaintiff was not provided care to help treat his medical or mental health. Thus, the Court finds that Defendant Goss is entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claim. See White, 897 F.2d at 108-110.

Further, with respect to Plaintiff's conclusory allegation that Defendant Goss fails to train his employees to deal with mental health patients, "the

inadequacy of ... training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of the person with whom the [inadequately trained subordinates] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62 (2011). Without such a pattern, a plaintiff must allege that the harm suffered was so "predictable that failure to train the [subordinate] amounted to **conscious disregard**" for his rights. Id. at 71 (emphasis in original). However, "[w]ithout notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. at 62.

Here, Plaintiff only makes conclusory failure to train allegations. Without more, a failure-to-train claim against Defendant Goss cannot survive summary judgment. Consequently, summary judgment will be entered in favor of Defendant Goss on Plaintiff's failure to train claim.

Plaintiff's final claim against Defendant Goss is that Defendant Goss denied him mental health treatment in violation of Fourteenth Amendment equal protection principles based on his sex. (Doc. 1 at 24).

- 44 -

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[ ] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. See id. "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Persons are "similarly situated" for equal protection purposes when they are alike "in all relevant aspects." Startzell v. City of

Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)).

The record before this Court reveals that Defendant Goss removed Plaintiff from treatment by female staff members due to Plaintiff's inappropriate behavior, not his sex, stating that any inmate with a misconduct concerning a female staff member is removed from treatment by female Psychology staff members. (Docs. 1 at 32, 64-8 at 14-15). As such, Plaintiff was not treated any differently from other inmates who received misconducts concerning female staff members. Defendant Goss' decision to remove female staff members from Plaintiff's Psychology team was not in violation of equal protection principles. Accordingly, Defendant Goss is entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim.

### 6. **Fourteenth Amendment Due Process**

Plaintiff claims that Defendant Tice violated his Fourteenth Amendment Due Process rights when she "illegally added sex offender program and evaluation to his program list and didn't evaluate him for program to determine if [he] need[ed] it or not and what type." (Doc. 1 at 23). Plaintiff further claims that he was not "given notice" or an "opportunity to appeal decision," and "it caused him to be added to a 2 year program" which

"caused him to be denied parole because he didn't enroll/complete a newly added program." Id.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. When reviewing a procedural due process claim, courts follow a two-step process. First, the court determines whether the plaintiff asserts an interest protected by the Fourteenth Amendment. Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Second, "[i]f the court concludes that such an interest exists, the next issue is whether the procedures provided to the plaintiff afforded that individual due process of law." Id.

The Third Circuit has stated: "[i]t is largely without question ... that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment." Id. at 326. In Renchenski v. Williams, the Third Circuit held "that the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment." Id, at 328, In recognizing this liberty interest, the Renchenski court stated that "only after a prisoner has been afforded due process may

- 47 -

sex offender conditions be imposed on an inmate who has not been convicted of a sexual offense." Id. at 326.

In view of this liberty interest, the Renchenski court considered the fact that a prisoner had not been convicted of a sex crime but that he had a "first degree murder conviction" in view of what it considered to be "the strong State interest in administering rehabilitative programs and maintaining order within the prison[.]" Id. at 331. The court held that the state Defendants did not need to "commence 'a new adversary criminal trial' before labeling Mr. Renchenski a sex offender and recommending him for therapy." Id. The Renchenski court outlined a process which Mr. Renchenski should be afforded including: written notice, a hearing, an opportunity to present witness testimony and to confront and cross-examine witnesses, administration of the hearing by an independent decisionmaker; a written statement by the decisionmaker as to the evidence relied on and the reasons for Renchenski's classification; and effective and timely notice. Id.

The record before this Court reveals that Plaintiff's October 13, 2016 DOC DC-43 Integrated Correctional Plan, reveals a Sex Offender Program Evaluation recommended by Defendant Tice on September 23, 2016. (Doc. 71-6 at 2).

On October 19, 2016, Defendant Houser, denied Plaintiff's Grievance No. 638269, challenging his sex offender recommendation by Defendant Tice as follows:

> Issue 2) PSS-Tice, who is the sex offender program facilitator, has made a recommendation for a sex offender evaluation following inmate Zamichieli's misconduct on 07/14/16 for Sexual Harassment & Indecent Exposure. Specifically, he sexually aroused himself & subsequently ejaculated on a lab coat of Nurse Practitioner-Ficks which was hung on her office chair. Additionally, Zamichieli had a prior Admin/Sep transfer request on 1/6/16 because of his infatuation with 2 female medical providers at SCI-Mahanoy. Lastly, inmate Zamichieli has a history of 12 Indecent Exposure and/or Sexual Harassment misconducts. There has been no specific recommendation for sex offender treatment, only a recommendation to participate in an evaluation for possible treatment. Lastly, given inmate Zamichieli's history of sexual inappropriate behaviors during his incarceration, a recommendation for sex offender evaluation is appropriate and PSS-Tice is a qualified staff member to make this recommendation, to conduct the specific evaluation and to make any recommendations for programming.

(Doc. 1 at 29). The record reveals no further appeal from this grievance.

Plaintiff's January 5, 2017 DOC DC-43 Integrated Correctional Plan reflects a Sex Offender Program Mod-High Intensity, recommended by Defendant Tice on November 4, 2016. (Doc. 71-6 at 3).

On December 27, 2016, the Pennsylvania Board of Probation and Parole denied Plaintiff parole, based on *inter alia*, Plaintiff's "need to participate in and complete additional institutional programs," stating that at his next review the Board would consider whether he had "successfully

participated in a treatment program for sex offenders and Thinking for Change or other cognitive behavioral program." (Doc. 71-8 at 2).

Defendant Tice admits to completing Plaintiff's "evaluation when [his] turn on the wait list arose." (Doc. 64-11 at 3). She, however, denies that she "was the one who initially recommended [Plaintiff] to participate in the sex offender program," stating that Plaintiff was "on the waiting list for an evaluation and participation" and the recommendation to participate in a sex offender treatment program "was not due to [Plaintiff's] filing of a PREA report." Id. Finally, Defendant Tice admits that "[w]hile an interview was not conducted, [she] did evaluate [Plaintiff's] file and the reasons for the recommendation and determined that treatment was necessary." Id. As a result, Plaintiff was "recommended for moderate-to-high intensity programming, which at a maximum is 24-months long." Id. Tice, however, denies that Plaintiff's "misconduct from July 2016 was the sole factor for recommending this programming." Id. As a result, Defendant Tice argues that she only made a recommendation concerning the need for Plaintiff to undergo sex offender programming and she did not deny Plaintiff due process by failing to interview him as part of her evaluation. (Doc. 64 at 43). Unfortunately, on the record before us, this Court cannot conclude the same.

First, at a minimum, under <u>Renchenski</u>, Plaintiff need be afforded written notice that the recommendation of a sex offender program was being added to his Correctional Plan, and then, an opportunity to appeal the decision. There is no evidence of record that Plaintiff was given notice, a hearing, or the ability to appeal his designation to a sex offender treatment program. In fact, Defendant Tice admits that Plaintiff was not involved in the decision and that her recommendation was based only on her evaluation of Plaintiff's file. (<u>See</u> Doc. 64-11 at 7). This admission alone reveals that Plaintiff's placement in a sex offender program runs afoul of the Third Circuit's Due Process requirements set forth in <u>Renchenski</u>. Thus, based on the record before this Court, Defendant Tice's motion for summary judgment must be denied.[7]

### 7. <u>Verbal Harassment</u>

It has been recognized that the use of words generally cannot constitute a constitutional violation. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); Maclean v. Secor, 876 F.Supp. 695, 698–99 (E.D.Pa.

---

[7] Plaintiff also claims Tice violated of his "5th Amendment Due Process Double Jeopardy placed [him] at risk twice for same thing" as he was "sanctioned 30 days DC sanction for the misconduct" and the "2 year program" was not part of the punishment. (Doc. 1 at 23). Because Defendant Tice addresses only the Fourteenth Amendment violation in her motion for summary judgment, the Court will also permit this claim to proceed.

1995); Murray v. Woodburn, 809 F.Supp. 383, 384 (E.D.Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under §1983."). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Fisher v. Woodson, 373 F.Supp. 970, 973 (E.D.Va. 1973); see also Balliet v. Whitmire, 626 F.Supp. 219, 228–29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation ..."), aff'd, 800 F.2d 1130 (3d Cir. 1986). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, or under the Fifth Amendment's substantive due process clause. See Prisoners' Legal Ass'n, 822 F.Supp. at 189; Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). It has also been found

that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. Bieros v. Nicola, 860 F.Supp. 226, 233 (E.D.Pa. 1994); see also Prisoners' Legal Ass'n, 822 F.Supp. at 189; Murray, 809 F.Supp. at 384.

Therefore, based on the foregoing, Plaintiff's claims that he was on the receiving end of verbal harassment by various employees because he filed PREA complaints, (Doc. 1), fail as a matter of law. See Hart v. Whalen, 2008 WL 4107651, *10 (M.D.Pa. 2008).

### 8. State Law Claims

The Court declines to exercise supplemental jurisdiction over any state law claims. When a district court has dismissed claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. See 28 U.S.C. §1367(c)(3). The Court's decision regarding the exercise of supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity." See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when federal claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. See id. In the absence of a

viable federal claim and finding nothing to distinguish this matter from the ordinary case, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See id. at 350 n.7. Accordingly, the Court having dismissed Plaintiff's Eighth Amendment sexual assault and excessive force claims, will dismiss Plaintiff's state law assault and battery claims against Defendants pursuant to 28 U.S.C. §1367(c)(3).

## V. CONCLUSION

Based on the foregoing, the Court will grant Defendant Ficks' motion and supplemental motion for summary judgment. The Court will also grant the Commonwealth's motion for summary judgment as to all claims, except Plaintiff's claims against Defendant Tice.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 21, 2023**
18-0850-02

- 54 -